ALICE E. LEACH *vs.* ROYAL B. LEACH, 3d.

MAY 22, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is a divorce proceeding, brought on the sole ground of extreme cruelty. The trial resulted in a decision for the respondent and the case is now before us on one exception only, taken by the petitioner to that decision.

The parties were married January 22, 1938. Among the allegations made in a bill of particulars filed by her were some to the effect that during the period of one and a half years immediately preceding August 6, 1943, the respondent did not bathe with reasonable frequency, but would go without bathing for three weeks at a time and become very unclean; and that on two occasions, when their son was about two years old and again when he was about three and a half years old, the respondent struck the boy severely on the back, the second time knocking him to the floor.

The only other allegations of any consequence in the bill of particulars were that on or about December 5, 1942, the respondent threatened to strike her and would have done so had she not seized his arms, and he dragged her from one room into another; and that on August 5, 1943, he struck her in the face with such force that she was knocked to the floor and he continued to strike her on the face and body, with the result that her face and right leg were bruised.

At the trial of the case it was shown that the parties and their small son lived with her father and mother in one home in the city of Providence from June 1940 to June 1943; and that from the latter date to August 5, 1943, when the petitioner permanently left the respondent, taking their son with her, the three of them lived in a small home in Old Warwick in this state.

As to the matter of personal uncleanliness on the part of the respondent, the petitioner and her father and mother testified in support of that charge. But according to the respondent's testimony he kept himself as clean as his night work with machinery in a large manufacturing plant would permit and for about two years before his wife left him he belonged to the Y. M. C. A. in Providence and had frequent

shower baths. This latter testimony was supported by that of the assistant director of the men's division there.

As to the alleged cruelty to the child, there was also a conflict. The respondent testified that he simply spanked the child, not at all severely, as a disciplinary matter, the first time to prevent him from damaging valuable papers of the respondent, and on the second occasion to make him obey the command of the petitioner to get away from a place of danger. The respondent also denied that he ever threatened to strike his wife, if she did not obey him, as testified by her, and that he ever compelled her by force to do what she was unwilling to do.

As to the respondent's various acts and conduct above discussed, the trial justice found that they did not constitute extreme cruelty to the petitioner and called attention to the fact that there was no evidence tending to show any resulting damage to her health. None of them occurred within any short period of time before she permanently left their home and refused to live with him any longer. Until then they lived together as man and wife; and there was condonation, unless his treatment of her on their final evening together constituted extreme cruelty.

She testified that on that evening, August 5, 1943, they were quarreling because he objected to being with her relatives so much; and that she told him that she could not really go on living in the way he wanted her to, and to do the things that he expected of her. She testified that he then struck her so that she fell on the floor. She also testified: "He told me I would have to obey him and do exactly as he wanted me to, and that there was more where that came from. I started to cry on the floor, and he repeatedly struck me until, between blows, he asked me to stop crying. I kept crying and he kept striking me until I realized I would just have to stop; and then he ordered me to bed. When I got into bed I had stopped crying, but I must have made a slight moan, because he then reached over and struck me on my right leg, and ordered me not to make any more noise, and to

go to sleep." She added that because of what happened that evening her right leg was bruised, where he struck her, and her face was swollen. She said that she did not become hysterical or faint or strike him.

She testified also that during the next morning her mother and the latter's sister-in-law came to see her at her home and she showed her bruises to them. The mother corroborated this and testified that her daughter then told her what had happened the evening before and that she had been struck by the respondent and showed the bruises, which looked like hand marks, on her right leg. The relative by marriage, who was with the mother, corroborated her as to bruises on the petitioner's leg.

The respondent testified, without any contradiction and with some corroboration by testimony of the petitioner, that she had a rather serious streptococcus infection in the spring of 1943; and that she lost considerable weight and was nervous and sometimes hysterical that summer because he was on the night-shift at the manufacturing plant in Providence and she and their young son were alone in the house at night until he got home at about 6 a. m.

He also testified that on the evening of August 5, 1943, which was during his vacation from work, they had some argument and she became quite hysterical and slapped him in the face many times; that he slapped her once to see if that would bring her to her senses, but did not strike her otherwise; that he did not knock her down but she fainted and fell to the floor and may have cried; that he picked her up and put her on the couch and then got a glass of water from the kitchen, sprinkled some of it on her face to revive her and gave her some to drink; and that she then quieted down. He denied that he threatened to strike her.

He further testified that during the forenoon of the next day her mother and two of her aunts came and she asked him if he would mind if she went to stay at the house of one of these aunts for a few days during that aunt's absence, to get the meals for the latter's husband; that he told her that

he thought that she should stay with him rather than take care of her aunt's husband; but that she said that she was going anyway and would spend some time "with her folks"; that he tried to get her to have a private talk with him but she refused; that he then told her that he was going to the city and see a show; and that she did not tell him that she was going to leave him permanently.

He also testified that he came home in the evening of that day and found no one there and most of the furniture gone; that the next day he went to see her and that she then told him that she did not want to stay with him any more at that time but she did not definitely say what she was going to do; that a little electric stove and a bed had been left in the house; but that a few days later he found them gone and he closed the house and went to the Providence Y. M. C. A. and there took a room, which he continued to use. The wife's petition was sworn to on August 18, 1943. There was no evidence in the case that any injury to her health resulted from any conduct of the respondent. See *Grimes* v. *Grimes*, 61 R. I. 198.

In his decision the trial justice reviewed the testimony of the two parties as to what occurred on the evening of August 5, 1943. He stated that he could not believe her testimony that while she was on the floor the respondent continued to beat her on the face and body. He also stated that he felt that she was nervous at the time and that she had magnified what had occurred then; and he called attention to the fact that the respondent, after lifting her from the floor, put some water on her face and had given her some to drink. He emphasized the fact that the petitioner had introduced no medical testimony in support of her charge of cruelty.

He quoted at considerable length from the opinion in *McLaughlin* v. *McLaughlin*, 44 R. I. 429, in which this court stated, at page 433: "The state will not permit a divorce to be granted by default nor upon admissions of the respondent made in the pleadings; but only upon affirmative convincing

evidence that the petitioner is without fault and that the respondent has been guilty of an offence which is destructive of the marriage contract." At the end of his decision he stated that upon consideration of the evidence he could not "arrive at the conclusion that the petitioner has by affirmative convincing evidence established her case by that weight of the evidence." He therefore found that the petition must be denied and dismissed.

Upon consideration of all the evidence in this case and the law applicable thereto, we are of the opinion that the trial justice applied the correct rule of law and that he was not clearly wrong in finding that the petition must be dismissed.

The petitioner's exception is overruled, and the case is remitted to the superior court.

*Clinton G. Clough,* for petitioner.

*Francis J. O'Brien,* for respondent.

